UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

SHAMSIDDEEN ISIAH HATCHER )
)
    Plaintiff, )
)   No. 2:14-cv-204-TWP
)
v. )
)
DEPUTY ROLLER, *et al.* )
)
    Defendants. )

**MEMORANDUM OPINION**

Acting pro se, Shamsiddeen Hatcher, an inmate confined in the Sullivan County Detention Center, has submitted this civil rights complaint for damages under 42 U.S.C. § 1983, as well as an application for leave to proceed without payment of fees or costs.

**I.    The Filing Fee**

Plaintiff's application to proceed *in forma pauperis* reflects that he has a zero (0) balance in his inmate trust account [Doc. 6-1], but it remains that, as a prisoner, he is responsible for paying the filing fee. 28 U.S.C. § 1915(b)(1). Thus, his application is **GRANTED** [Doc. 4], but he is **ASSESSED** the full filing fee of three-hundred, fifty dollars ($350.00). *McGore v. Wrigglesworth,* 114 F.3d 601, 607 (6th Cir. 1997) *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

Pursuant to 28 U.S.C. § 1915(b), the custodian of Plaintiff's inmate trust account at the institution where he now resides is **DIRECTED** to submit to the Clerk, U.S. District Court, 220 W. Depot Street, Suite 200, Greeneville, Tennessee 37743, twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding

month), but only when such monthly income exceeds ten dollars ($10.00), until the full $350.00 filing fee has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).[1]

The Clerk is **DIRECTED** to send a copy of this Memorandum and Order to the Sheriff of Sullivan County, Tennessee, to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of the Prison Litigation Reform Act ("PLRA") relating to payment of the filing fee. The Clerk is further **DIRECTED** to forward a copy of the Memorandum and Order to the Court's financial deputy.

## II. Screening the Complaint

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Black v. Barberton Citizens Hospital*, 134 F.3d 1265, 1267 (6th Cir. 1998); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992).

Under the PLRA, district courts must screen prisoner complaints and sua sponte dismiss those that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g., Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999).

> Responding to a perceived deluge of frivolous lawsuits, and, in particular, frivolous prisoner suits, Congress directed the federal courts to review or "screen" certain complaints sua sponte and to dismiss those that failed to state a claim upon which relief could be granted, that sought monetary relief from a defendant immune from such relief, or that were frivolous or malicious.

*Id.* at 1015-16 (6th Cir. 1999) (citing 28 U.S.C. §§ 1915(e)(2) and 1915A).

---

[1] Typically, the Court assesses an initial partial filing fee. However, because Plaintiff has a zero balance in his trust account, an initial partial fee will not be assessed. *McGore*, 114 F.3d at 606 (explaining that "no initial partial filing fee payment is required when a prisoner has [] no funds in a trust account").

In screening this complaint, the Court bears in mind that pro se pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, the pleading must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means that the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

The "facial plausibility" standard does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678 (citations and internal quotation marks omitted). The standard articulated in *Twombly* and *Iqbal* "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

The Court examines the complaint in light of the above standard and requirements.

### III. Discussion

#### A. **Immunity**

Plaintiff filed this 1983 lawsuit against Judge Montgomery and Judge Lauderback both in their official and individual capacity. The doctrine of judicial immunity applies, and the law in this arena has been summarized by the Sixth Circuit:

> It is a well-entrenched principle in our system of jurisprudence that judges are generally absolutely immune from civil suits for money damages. *Mireles v. Waco*, 502 U.S. 9, 9, 112 S. Ct. 286, 287, 116 L.Ed.2d 9 (1991); *Forrester v. White*, 484 U.S. 219, 108 S. Ct. 538, 98 L.Ed.2d 555 (1988); *Stump v. Sparkman*, 435 U.S. 349, 98 S .Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray*, 386 U.S. 547, 87 S. Ct. 1213, 18 L.Ed.2d 288 (1967); *Bradley v. Fisher*, 80 U.S. (13 Wall.)

3

335, 20 L.Ed. 646 (1872). Immunity from a § 1983 suit for money damages is no exception. *See Pierson*, 386 U.S. at 554, 87 S. Ct. at 1217-18. The doctrine of judicial immunity is justified "by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." *Antoine [v. Byers]*, 508 U.S. [249,] 435, 113 S. Ct. [2167,] 2171[(1993)].

Thus, compelling public benefits outweigh the "unfairness and injustice to a litigant [that] may result on occasion, [because] 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Mireles,* 502 U.S. at 10, 112 S.Ct. at 287 (quoting *Bradley*, 80 U.S. (13 Wall.) at 347). If it were otherwise and judges were personally liable for erroneous decisions, then "the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits." *Forrester*, 484 U.S. at 226-27, 108 S.Ct. at 544.

*Barnes v. Winchell*, 105 F.3d 1111, 1115-16 (6th Cir. 1997). The only exceptions to judicial immunity are acts which are non-judicial or which are taken in the absence of all jurisdiction. *Mireles*, 502 U.S. at 11-12.

The Plaintiff's claims against Judge Montgomery and Judge Lauderback sprang from alleged action taken in their judicial capacity. Presiding over criminal cases and sentencing a criminal defendant "affect[s] the rights only of the individual plaintiff[] in specific judicial proceedings; these acts are example[s] of paradigmatic judicial acts," *Mann v. Conlin*, 22 F.3d 100, 104 (6th Cir. 1994), all of which lie within the scope of Judge Montgomery and Judge Lauderback's jurisdiction and confer on them absolute immunity from this suit for damages. *See, Pierson*, 386 U.S. at 553-54 (1967).

Because the claims alleged against Defendants Judge Montgomery and Judge Lauderback lie within "a sweeping range of judicial actions" protected by the doctrine of judicial immunity, *Barnes*, 105 F.3d at 1115, Judge Montgomery and Judge Lauderback and all Plaintiff's claims against them in their individual and official capacities are **DISMISSED**.

4

B. **Plaintiff's Allegations**

1. **Access to Courts**

Plaintiff alleges that on June 26, 2014, "the entire D-Cell along with [himself] [were] denied the right to file a tort claim by Deputy Davis and Lt. Salyers" [Doc. 1-1 p.1]. Plaintiff alleges that Deputy Davis and Lt. Salyers failed to bring him the proper §1983 form to file a lawsuit [*Id*.]. Plaintiff claims to have declarations signed by several inmates stating that they have never received a response from past grievances filed, that they are blocked from accessing news, media, obituaries, outside world, and that they are being denied access to courts [*Id*.]. Plaintiff states, "These suits have major class action potential!" [*Id*.].

The Court finds that insofar as Plaintiff seeks relief against Defendants on behalf of the entire D-Cell inmates, he lacks standing to seek such relief. His claims will therefore be construed as limited to the alleged violations of his own constitutional rights. *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008).

Plaintiff further complains that the jail law library contains a law book with Tennessee Code Annotated 39-17-432 ripped out [Doc. 1-8 p. 3]. Additionally, in the jail's law library, "500-530 S.W. 2d (Tenn.)" section is missing which focuses on old drug cases [*Id*.]. Plaintiff states that he asked several jailers to print the standards of the school zone act from the Internet, but that the jailers are not allowed to make copies for other inmates [*Id*.]. Plaintiff asserts that he could not "put 100% of trust into [his] attorney because [his attorney] was appointed" [*Id*.].

Without access to this information, Plaintiff argues that he was without a defense to the school zone act filed against him and was forced to reschedule a bond hearing [*Id*. at 4]. Plaintiff states that had he been allowed "full access to the courts, [he] would have had the school zone enhancement dropped and would have proceeded with the bond hearing. This is why [he] [is]

5

still incarcerated." [*Id*.]. Plaintiff alleges to have written several letters asking different jail administrators for a copy of "*State v. Gaddis*, 530 S.W. 2d Tenn. 1975" and the school zone act [*Id*.]. Plaintiff complains that jail officials not only ignore his letters, but also ignore grievances, and thereby deny inmates access to courts [*Id*.].

Prisoners have a constitutional right to access to the courts, *Bounds v. Smith*, 430 U.S. 871, 821 (1977), but no abstract, freestanding right to a law library prison. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In order to succeed on a claim for denial of access to courts, a plaintiff must show that he has actually been impeded in his efforts to pursue a non-frivolous legal claim regarding his conviction or conditions of confinement. *Id*. This means that a plaintiff "must plead and prove prejudice stemming from the asserted violation, [such as] the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Little field,* 92 F.3d 413, 416 (6th Cir. 1996) (citing *Lewis*).

Plaintiff has failed to allege any actual injury caused by the failure to obtain a copy of a specific case and failure to obtain information on the school zone act. Merely stating that he would not be incarcerated, or that the school zone enhancement would have been dropped but for his inability to obtain information on the topic, is conclusory and without any supporting evidence. *See, Pilgrim*, 92 F.3d at 415-16 (a conclusory allegation of prejudice, along with an exhibit showing that the state court denied two motions filed by the inmate were insufficient). Also, during his legal proceedings, Plaintiff was adequately represented by an appointed attorney, which satisfies the standard duty to provide access to courts. "[A] prisoner's constitutionally guaranteed right of access to the courts has been protected when a state provides that prisoner with *either* the legal tools necessary to defend himself, e.g., a state-provided law library, *or* the assistance of legally trained personnel." *Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir.

6

1983). Thus, Plaintiff had sufficient means to access the court and his claim of denial of such access is without merit.

### 2. Access to Outside World

#### A. Mail

Plaintiff alleges that Deputy Ball returned to him a letter that he had mailed out on May 12, 2014 addressed to "Tennessee Code Editor The Michie Company" [Doc. 1-3 p. 1]. Originally, the letter was sent as legal mail sealed in front of a jail administrator [*Id.*]. Based on the legal mail status, Plaintiff argues that "if this was a case of a 'return to sender' the jail official, Deputy Ball, should have opened the mail/envelope in [his] presence" [*Id.*]. Plaintiff further alleges that he wrote three letters to a human rights lawyer in Florida and never received a response [*Id.*]. As a result, Plaintiff contends that his stress levels "have sky-rocketed" because he no longer feels like a citizen of the United States [*Id.*].

A prisoner retains a right to send mail, *Hudson v. Palmer*, 468 U.S. 517, 547 (1984), though this right may be restricted by rules which "further an important or substantial government interest unrelated to the suppression of expression," and do not constrict First Amendment freedoms "greater than is necessary or essential to the protection of the particular governmental interest involved." *Bell-Bey v. Williams*, 87 F.3d 832, 838 (6th Cir. 1996) (citing *Procunier v. Martinez*, 416 U.S. 396, 413 (1974), *overruled, in part, on other grounds by Thornburgh v. Abbottt*, 490 U.S. 401 (1989)).

The Court finds that Plaintiff's letter to The Michie Company is non-legal outgoing mail. The Sixth Circuit has previously held that mail from the American Bar Association and county clerks is not legal mail; but mail from courts, private attorneys, and state attorneys general is legal mail. *Sallier v. Brooks*, 343 F.3d 868, 873-78 (6th Cir. 2003). The Michie Company is a

7

publishing company for legal material, but a letter to the company would not be considered legal mail and therefore is not required to be opened in the inmate's presence. Even if the letter were to be found as legal mail, this Court finds that "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation… [r]ather, the inmate must show that prison officials 'regularly and unjustifiably' interfered with the incoming mail. *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).

Furthermore, Plaintiff asserts that on June 6, 2014 officials seized a letter written in colored ink without informing Plaintiff of who the letter was from [*Id*. at 3]. Although Plaintiff admits that the Sullivan County Detention Center handbook specifies that all letters must be written in blue or black ink, Plaintiff states that officials should at least give him the name and return address of the letter's sender [*Id.*].

The Court finds that both the policy regarding inspection of non-legal mail and the policy against colored ink do not unconstitutionally infringe on Plaintiff's communicative rights. The obvious government interest behind these policies is to maintain prison safety and to promote institutional order. See*, e.g., Frey v. Raisanen*, No. 2:14-cv-10192, 2014 WL 545794 at *2 (E.D. Mich. Feb. 11, 2014) (citing to *Altizer v Deeds*, 191 F.3d 540 (4th Cir. 1999), for its finding that opening and inspecting inmate's mail is reasonably related to legitimate penological interests and does not violate the First Amendment and to *Smith v. Delo*, 995 F.2d 827, 830 (8th Cir. 1993), for its holding that prison officials are justified in screening non-legal mail for escape plans, contraband, threats, or evidence of illegal activity).

The regulations need only be "generally necessary" to a government interest, though need not be the least restrictive means of accomplishing the legitimate penological goal behind the challenged regulation. *Bell-Bey*, 87 F.3d at 838. The Court is inclined to view the restriction on

8

Plaintiff's incoming correspondence as necessary to preserve internal order and security and, certainly, as one of those matters more suitably decided by a prison administrator rather than a court.

Given the purpose behind the policies requiring outgoing and/or incoming non-legal mail at Sullivan County Detention Center, the Court finds that Plaintiff's allegations regarding the opening of his letter to The Michie Company outside of his presence, and the failure of prison officials to provide information of a letter written in colored ink are not violative of Plaintiff's First Amendment right. Therefore, these claims fail to state a claim in which relief may be granted.

### B. Visitation

Plaintiff alleges that since February of 2014, he has informed jail officials that the Securus visitation phones have "a bad shortage to where it is very difficult to hear what the other person is saying" [Doc. 1-3 at 4]. As a result, at least on one occasion described, Plaintiff had to ask his visitor to repeat herself multiple times, therefore "robbing [Plaintiff] of [his] visitation time" [*Id.*].

"Prison inmates have no absolute constitutional right to visitation." *Bellamy v. Bradley*, 729 F.2d 416, 420 (6th Cir. 1984). Indeed, in considering a case involving prison visitation, the Supreme Court has stated that "freedom of association is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (emphasis added). Rather than a constitutional issue, this Court interprets that Plaintiff's allegations refer to negligence by some unidentified jail official in failing to address a malfunctioning phone.

The Supreme Court has observed that running a prison is an extraordinarily difficult endeavor which is "peculiarly within the province of the legislative and executive branches of

government;" one for which the courts are ill suited; and one to which, ordinarily, courts will defer to prison officials' "expert judgment." *Turner v. Safley*, 482 U.S. 78, 84–86 (1987). The Court finds that Plaintiff's claim of interference with his denied right to access the outside work by means of a malfunctioning telephone is not a constitutional violation under §1983, and therefore, no claim in which relief may be granted.

### 3. Deliberate Indifference

Plaintiff alleges that Defendants Nurse Stephanie and Nurse Penny acted with deliberate indifference to his dietary needs [Doc. 1-4 p. 1]. Plaintiff claims to be lactose intolerant [*Id.*]. He claims that he is being denied a non-lactose diet and "getting robbed of essential vitamins" [*Id.*]. Plaintiff alleges that the jail does not have a meal rotation and inmates are fed the same meals every week excluding food with vitamins D, K, or E [*Id.*]. Plaintiff asserts that the meal plan provided is not enough to sustain body weight and "inmates are losing weight" and starving [*Id.*].[2] Plaintiff complains that as a result of his diet his "bones, joints, and teeth are getting weak" [*Id.*]. Also, due to the lack of potassium in his diet, Plaintiff complains that he experiences frequent cramps and muscle spasms [*Id.*].

The Court finds that Plaintiff failed to provide sufficient supporting evidence to state a claim of deliberate indifference of dietary needs. Plaintiff provided mere conclusory statements without any factual basis regarding his claims against Nurse Stephanie and Nurse Penny. For example, Plaintiff claims to be lactose intolerant but failed to provide any evidence of such

---

[2] The Court notes that in a previously filed 42 U.S.C. § 1983 complaint filed in this Court, Plaintiff alleges vitamin and nutrient/calorie deficiency along with the denial of exercise which has caused him to gain several pounds of fat. *Hatcher v. Tennessee Department of Corrections, et al.*, 2:14-cv-369, Doc. 16 p. 2.

Also, the Court notes that Plaintiff alleges that "inmates are losing weight" but never states or provides any evidence of personal weight loss [Doc. 1-4 p. 1]. As previously stated, insofar as Plaintiff seeks relief against Defendants on behalf of other inmates, he lacks standing to do so.

diagnosis from a medical professional. If he has not provided the jail with confirmation of his medical issue, jail administrators have no duty to accommodate such dietary request. Without a diagnosis from a medical professional stating that Plaintiff is in fact lactose intolerant and required to follow a non-lactose dietary plan, this Court finds that no constitutional right has been violated. The Sixth Circuit only requires that prison administrators must provide an adequate diet. *Alexander v. Carrick*, 2002 WL 442253. If the prisoner's diet is sufficient to sustain the prisoner in good health, no constitutional right has been violated. *Id*. While a plaintiff may wish the prison menu had more variety, prison food is not required to be tasty or widely varied. *See Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977).

Similarly, Plaintiff argues that his diet lacks vitamins D, K, and E, but fails to provide any evidence from a medical professional that his body is lacking these vitamins. Plaintiff's conclusory statement that he lacks certain vitamins is not enough for the Court to find Plaintiff's constitutional rights have been violated.

Also under the heading of deliberate indifference, Plaintiff argues that he provided DEA Agent Scott Reed information about international drug dealers, but has since been refused any alternative sentencing [Doc. 1-4 p.1]. Plaintiff states that "[t]he DEA has their hands tied because Barry Staubus and Kent Chitwood are being deliberately indifferent toward [him]" [*Id*. at 2]. Plaintiff is concerned about the safety of his family and wishes to be placed in a witness protection program [*Id*.].

The Court finds that it is District Attorney Staubus and Assistant District Attorney Chitwood's complete discretion to provide Plaintiff with an alternative sentence. Plaintiff cannot assert a constitutional right to be placed in the Witness Protection Program. Therefore, there exists no claim upon which relief may be granted.

11

### 4. Excessive Bail

In October of 2013, a Grand Jury indicted Plaintiff on three counts of the sale and delivery of cocaine, one of which occurred within one thousand feet of a school zone [Doc. 1-5 p. 1]. Judge Montgomery imposed a $40,000.00 bond [*Id*.]. Plaintiff alleges that the bond amount imposed is "absurd, due to lack of violence, conspiracy, or maliciousness in all three crimes" [*Id*.]. In his complaint, Plaintiff also states two other specific instances in which he was in front of a judge for alleged criminal activity such as aggravated burglary and felony vandalism [*Id*.]. Plaintiff argues that in those prior instances the bail imposed was in excess and higher than most other inmates he has spoken to while in jail [Id.].

Excessive bail is prohibited by the Eighth Amendment of the United States Constitution. Excessive bail is that which is set at an amount higher than an amount reasonably necessary to assure the presence of a defendant at trial. *Stack v. Boyle*, 342 U.S. 1, 5, 72 S.Ct. 1, 96 L.Ed. 3 (1951). The Court observes that Plaintiff makes no specific allegations as to why his bail bond was excessive. For example, Plaintiff does not provide his criminal history, the complete facts of the charges against him, his connection to the community, or his flight risk. Plaintiff has therefore failed to raise a sufficient claim for excessive bail.

### 5. Freedom of Religion

On May 21, 2014, Plaintiff filed a religious accommodation form requesting to be taken to a place of solitary and silence so he "could really pray out to [his] God alone and in peace" [Doc. 1-6 p.1]. After not receiving any response, Plaintiff filed another religious accommodation form requesting the same [*Id*.]. On June 1, 2014, Plaintiff filed a religious accommodation form requesting grape juice and unleavened bread in order to practice communion [*Id*.]. Plaintiff has

not received any response to his accommodation requests [*Id*.]. Plaintiff alleges that he has been denied the right to practice his religious beliefs [*Id*. at 2].

The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." While incarcerated, prisoners retain certain constitutional rights, including the right to exercise their religious beliefs. *Cruz v. Beto*, 405 U.S. 319 (1972); *Thompson v. Kentucky*, 712 F.2d 1078, 1080 (6th Cir. 1983). A prisoner has an absolute right to *hold* a religious belief, *McDaniel v. Paty*, 435 U.S. 618, 643 (1978) (italics added), but this does not mean that his right to *exercise* religious beliefs is not subject to reasonable restrictions and limitations by prison officials. *Turner v. Safley*, 482 U.S. 78, 88 93 (1987) (holding that prison regulations which invade an inmate's constitutional rights are valid so long as they are "reasonably related to legitimate penological interests"); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 53 (1987) (applying *Turner* to a free exercise claim); *Jones v. North Carolina Prisoners' Labor Union, Inc*., 433 U.S. 119, 125 (1977) (noting that the fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment). All that is required under the First Amendment is that prisoners be provided "reasonable opportunities" to practice their religion. *Husdon v. Palmer*, 468 U.S. 517 (1984). Therefore, an inmate's First Amendment right to exercise his religious beliefs may be subjected to reasonable restrictions and limitations reasonably related to legitimate penological interests. *Bell v. Wolfish*, 441 U.S. 520 (1979).

"The Supreme Court has held that prison officials are not constitutionally required to sacrifice legitimate penological objectives to accommodate a prisoner's religious belief, if the prisoner retains the ability to engage in other religious observances and is not deprived of all forms of religious exercise. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351–352 (1987).

13

The Court finds that providing a place of solitude and silence within the confines of a prison would be difficult, impracticable, and is not constitutionally required. Plaintiff is able to practice his religion in other means available.

### 6. Racial and Alien Discrimination

Plaintiff alleges that because he is a black male with an Islamic name he is discriminated against [Doc. 1-7 p. 1]. Specifically, Plaintiff argues that Judge Lauderback and Judge Montgomery discriminated against him when they set his bail at $60,000 [*Id*.]. He has spoken with other black males at the jail and has determined that "their plea offers and bail are significantly higher than other inmates of lighter skin color" [*Id*.].

The Court refers to the previous section in this memorandum and order titled "Immunity" in which Judge Montgomery and Judge Lauderback are dismissed in their individual and official capacities under judicial immunity. This immunity is not intended to protect or benefit a malicious or corrupt judge. It is intended to protect the important public interest in maintaining an environment in which judges can do their jobs without fearing harassment by unsatisfied litigants. *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The claims of discrimination against Judge Montgomery and Judge Lauderback appear to be based solely on Plaintiff's dissatisfaction with actions those Defendants took in their capacity as judges. The law protects Judge Montgomery and Judge Lauderback from having to defend this lawsuit.

### 7. Retaliation

Plaintiff alleges that Lieutenant Light acted in "clear retaliation" when he forwarded a letter written by Plaintiff to the District Attorney's Office [Doc. 1-8 p. 2]. Plaintiff argues that he addressed the private letter to Lieutenant Light and explained to him that the contents of that letter were to be kept confidential [*Id*.]. In the letter Plaintiff described instances in which an

14

individual shot at himself and his family on two separate occasions [*Id.*]. In the letter, Plaintiff also included threats of suit against Bristol, Tennessee police and the Sullivan County Sheriffs' Office "for neglecting [his] claim that [his family's] lives have been threatened twice" [*Id.*]. Plaintiff claims that due to Lieutenant Light forwarding this letter, the Assistant District Attorney, Kent Chitwood withdrew his willingness to work out any type of deals or negotiations [*Id.*].

"Retaliation" by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment." *Zilich v. Longo*, 34 F.3d 359, 364 (6th Cir. 1994). "[A]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under §1983 even if the act, when taken for a different reason, would have been proper." *Bloch v. Ribar*, 156 F.3d 673, 681-82 (6th Cir. 1998) (citation omitted). A prisoner states a retaliation claim if he shows: (1) he engaged in protected conduct (2) an adverse action was taken against him which would deter a person ordinary firmness from continuing to engage in such conduct and (3) the adverse action was motivated by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

The Court finds that Plaintiff has failed to meet any of the elements necessary to prove a claim of retaliation. First, writing a letter to a lieutenant is not a protected conduct. Also, there is no evidence to suggest that because Lieutenant Light forwarded Plaintiff's letter to the District Attorney's Office, Assistant District Attorney, Kent Chitwood possessed a retaliatory motive.

The Court further finds that a prosecutor has complete discretion as to what to prosecute, which offenders to prosecute, whether to offer a plea bargain, and to which offenders to extend those offers. Plaintiff cannot use the means of filing a §1983 civil action to force a state prosecutor to enter a plea bargain. Accordingly, the Court finds that Plaintiff's "rank

15

Case 2:14-cv-00204-TWP   Document 25   Filed 09/28/15   Page 15 of 16   PageID #: 109

speculation" and "Defendant-unlawfully-harmed-me allegation" does not suffice to state a valid claim for retaliation. *See*, *Iqbal*, 556 U.S. 662.

## IV. Conclusion

Based on the above discussion, the Court finds that Plaintiff's contentions fail to state §1983 claims against any of the Defendants. Therefore, this case will be **DISMISSED** sua sponte in its entirely against all named Defendants, under 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A.

Additionally, the Court has carefully reviewed this case pursuant to 28 U.S.C. § 1915(a)(3) and hereby **CERTIFIES** that any appeal from this decision would not be taken in good faith. *See* Fed. R.App. P.24(a).

**AN APPROPRIATE ORDER WILL ENTER**.

ENTER:

 s/ Thomas W. Phillips_____
SENIOR UNITED STATES DISTRICT JUDGE